IN THE MATTER OF THE FINAL AND JUDICIAL SETTLEMENT OF THE ACCOUNTS OF EUGENE HEATH, AS ASSIGNEE OF CLARENCE HEATH AND OTHERS, INSOLVENT DEBTORS.

*General assignments—preference to wages and salaries due to employee given by section 29 of chapter 466 of 1877, as amended by chapter 283 of 1886—it is not limited to person employed at the time of making the assignment—not lost by taking a note for the amount due.*

Section 29 of chapter 466 of 1877, as amended by chapter 283 of 1886, directs that "in all distributions of assets, under all assignments made in pursuance of this act, the wages or salaries *actually owing to the employees of the assignor or assignors at the time of the execution of the assignment* shall be preferred before any other debt."

*Held,* that an employee of the assignor, whose wages were unpaid at the time of the assignment, is entitled to a preference, although he ceases to be an employee prior to the execution of the assignment.

That the words "at the time of the execution of the assignment" were used for the purpose of including the "wages or salaries" at that time owing by the assignor to his employees, and not for the purpose of excluding from the benefits of the statute those who were not actually employed by the assignor at the time the assignment was executed.

The referee in this case rejected a claim presented by George E. Pettit for a balance of $517 for wages due to him for services rendered as a traveling agent of the assignor, in the year 1882, upon the ground that by taking a note due at a future time for the payment of the salary he converted the indebtedness, arising for services rendered, into a loan to the assignor, which excluded him from participating in the statutory preference.

*Held,* that the referee erred in so doing.

That unless it was proved that there was a specific agreement that the note should be received in payment of the debt for which it was given, and that the parties intended to merge the original promise in the new one, and to receive the latter in substitution for the original obligation, a debt was owing to the claimant from the assignor for services rendered to him, at the time of the making of the assign- ment, within the meaning of the statute.*

APPEAL from an order of the Ontario County Court, rejecting the claim of George E. Pettit, presented to the assignee as an indebted- ness owing to Pettit, as an employee of the assignor, and claiming a preference in payment over the general creditors, as provided in chapter 283 of the Laws of 1886. The assignment was made and executed on the 10th day of April, 1885. The account was pre- sented to the assignee on the 14th day of July, 1885, and was rejected by the assignee; and afterwards, and on the 6th day of May, 1886, the matter having been brought into the County Court, was referred to a referee to hear the proofs of the parties and to report the same to the court with his findings of fact, together with his opinion thereon. On the coming in of the referee's report, in which he advised the rejection of the claim, and on the 11th day of May, 1886, the decree was entered, which, among other things disallowed the claim as one not entitled to a preference, and from such part of the decree the claimant has brought this appeal. It appears there were funds sufficient in the hands of the assignee to pay in full the claim if the same was entitled to a preference. The assignment contained a provision in these words: "With, and out of the proceeds of such sales and collections, the said party of the second part shall pay and discharge, in full, the wages or salaries now actually owing to any of the employees of the party of the first part, as such copartners, according to the provisions of chapter 328 of the laws of the State of New York, passed in 1884." This direction was to be carried out before any payment was made to the general creditors.

The further facts, as bearing upon the question considered by the court, are stated in the opinion.

---

* For a construction of the provision of chapter 376 of 1885, giving a preference to the wages due to the employees, operators and laborers of insolvent corporations, where a receiver has been appointed, see *People of the State of New York* v. *E. Remington & Sons* (45 Hun, 329).

*H. R. Durfee*, for the appellant.

*F. L. Brown*, for the assignee.

*H. M. Field*, for the general creditors.

BARKER, J.:

The question, as presented, is whether a former employee of an insolvent assignor, who has made an assignment of his property for the benefit of his creditors, in pursuance of chapter 466 of the Laws of 1877, is entitled to a preference in payment as provided by chapter 283 of the Laws of 1886, amending the said act in case his wages remain, in fact, unpaid at the time of the assignment. We need not refer to the terms of the amendment which was made in the year 1884 (Chap. 328), as the subsequent amendment of 1886 clearly repeals the same.

As the amendment of 1886 was in full force when the decree was entered, the right of the claimant to a preference in payment must be determined by the provisions of that enactment. The provisions of the respective amendments were substantially the same, the last amendment was adopted for the sole purpose of removing the doubt which was supposed to exist as to whether employees were entitled to a preference if the assignor failed to make provision in his assignment for such preference in payment. By the latter amendment the provision is as follows: " In all distributions of assets under all assignments, made in pursuance of this act, the wages or salaries actually owing to the employees of the assignor or assignors at the time of the execution of the assignment, shall be preferred before any other debt." This language needs no construction whatever to reach the legislative intent. The words used clearly indicate that the debt of an employee which is, in fact, unpaid at the time of the assignment is embraced in the preference, without regard to the time when the wages were earned.

The words of the statute, viz. : " At the time of the execution of the assignment," were used for the purpose of including the " wages or salaries," at that time, owing by the assignor to his employees and not for the purpose of excluding from the benefits of the statute those who were not actually employed by the assignor at the time the assignment was executed. This is a beneficient, as well

as a remedial statute, and should be liberally construed so as to meet a wrong and advance the remedy which the legislature had in mind in passing the same. No sound and sensible reason can be assigned for limiting the benefits given by the statute, to the class of employees who happen to be employed by the assignor on the day the assignment was executed, and excluding those who were such the day previous; if the legislature intended to make such a distinction it is reasonable to suppose that the purpose would have been clearly and unmistakably expressed.

In disposing of the question under considereration we hold that an employee of the assignor, whose wages were unpaid at the time of the assignment is entitled to a preference, although he ceases to be an employee prior to the execution of the assignment. These views make it unnecessary to take further notice of the argument of the respondent's counsel that all statutes must be construed prospectively unless words were used clearly indicating that the legislature intended to give the statute retroactive operation. In the opinion of the learned referee, the statute has a retrospective operation to the extent of embracing former employees, whose debt for services were not paid at the time of the assignment, but he concurred with the assignee in rejecting the claim on the ground that, by taking a note due at a future day for the payment of his salary, the claimant converted the indebtedness arising for services rendered into a loan to the assignor, which excludes him from participating in the statutory preference. This presents the remaining question for consideration. The plaintiff commenced service with the assignors, as their traveling agent, in January, 1882, and continued in their employment until the latter part of December, 1884, at a salary of $100 per month and his traveling expenses. At the end of the first year a settlement was had between the parties and the balance found due Pettit for his labor that year was $517.04. At the end of the year 1883 another settlement was concluded and the balance found due for the year was $617.34. On the 1st day of September, 1883, Pettit loaned to the assignors a sum of money, which, together with the balance of his wages unpaid at the end of the first year's service amounted to $1,750, for which he took their promissory note, payable six months after date, with interest. This note was renewed on the 12th day of March, 1884, for the same

sum, payable six months after date, the interest thereon being paid up to that time. On the twenty-sixth day of November the note was again renewed for the sum of $1,820, payable six months after date. At the time of the last settlement the balance then found due the claimant was $360.84, which was then paid, and from that time forward he was not in their service. In presenting the claim to the assignee for allowance and for payment as a preferred debt the claimant stated the same to be for his salary as an employee, and insisted that the entire indebtedness as represented by the note was for services rendered. The giving of the original note and its subsequent renewals had the effect of extending the time of the payment, but did not constitute an actual satisfaction of the original indebtedness so long as the note remained in the hands of the original debtor. It does not appear from the case that the note was presented to the assignee with an offer to surrender and cancel the same. No point was made by the assignee, on his refusal to recognize the claim as one to be preferred, that the note was not surrendered to him for cancellation, nor did the referee place his conclusions of law, that the debt was not entitled to a preference, upon that ground. Undoubtedly if the claim had been allowed, the claimant would have lost all right to proceed upon the new promise expressed in the note and it should have been surrendered up to the proper party for cancellation.

As we are of the opinion that he might surrender the note and base his claim on the unpaid debt as for services rendered, we do not think the proceeding should be affirmed on the sole ground that it does not appear by the record that the note was surrendered up or tendered to the assignee for cancellation. No point was made on the hearing that, until that was done, the right to proceed upon the original claim was gone. If, at the time the note was taken, or when the same was subsequently renewed, it was the intention of the claimant to change the nature and character of his indebtedness against his employers and convert the same into a loan, and he received the note in payment of the original debt, then we think the transaction had the legal effect to deprive him of the preference secured by the statute. But the fact has not been found that such was his intention and purpose. The learned referee, as it appears by his opinion, held as a matter of law that such was the legal

effect of the transaction, without passing upon the question of the purpose and intention of the claimant in taking and renewing the note. Unless there was a specific agreement, that the note should be received in payment of the debt for which it was given, the payee of the note could surrender the same and maintain an action upon the debtors original promise, by surrendering the note for cancellation. Without the fact being found, that it was the intention to merge the original promise in the new one, and to receive the same in substitution for the original, we think, within the meaning of the statute, a debt was owing the claimant for services at the time the assignment was made.

We concur with the referee in the fact found, that the consideration of the note was for the money loaned, except as to the sum of $517, the balance due from the first year's wages, and that the sum of $1,000, paid in 1884, was paid and allowed upon his salary earned after the close of the year 1882, and that nothing remained unpaid to the claimant for services except the sum already mentioned. It is manifest that the preference in favor of the employees, as stated in the assignment, was intended to be of the same character and limited to the same persons and classes of indebtedness as provided for by the act then in force. The assignment, therefore, does not, by its terms, create any preference which was not provided for by the statute.

We think a proper disposition to make of the case as now presented is, to reverse so much of the decree as rejects and overrules the plaintiff's claim for a preference in payment, under the statute, so far as it relates to the salary earned in the year 1882, and to direct a rehearing in the County Court on that subject, and that the costs of this appeal be paid out of the general fund in the hands of the assignee, if the claim is finally allowed as a proper claim.

SMITH, P. J., LEWIS and BRADLEY, JJ., concurred in result.

Order reversed as to the $517.04 embraced in note and rehearing ordered as to that part of the claim, and affirmed in all other respects. The costs of this appeal to be paid out of the assigned estate in case the preference of the claim is established.